GREEN, Judge.
Margarita F. Ruiz appeals an adverse final summary judgment entered in her breach of employment agreement/wrongful termination action against her former employer, Spanish Radio Network (“SRN”). Based upon the undisputed facts which follow, we affirm.
The employment agreement between Ruiz and SRN provided that the employer could terminate Ruiz at any time for good cause. The phrase “good cause” in the contract included, but was not limited to, the “sale or transfer of control of the radio station or company.” The agreement further provided that an employee could terminate his/her employment within thirty days following “a change in control of the ownership of the company as defined by the Federal Communications Commission (“F.C.C.”).”
On November 24, 1993, SRN and its owners entered into a stock purchase agreement with Heftel Broadcasting Corp. (“HBC”) for *554 the sale of the station and company. These parties initially agreed that the sale or transfer of the station and company would be culminated within fifteen days of the F.C.C.’s delivery of notice of its final approval of the transfer of ownership. On August 10, 1994, the F.C.C. granted its initial approval of the transfer of ownership on the F.C.C.’s standard Form 732. Final approval of the transfer was stayed pending the F.C.C.’s resolution of two formal protests to the proposed transfer. In a letter agreement dated August 12, 1994, SRN and HBC modified their stock purchase agreement to waive the previous condition that the closing take place after the F.C.C.’s final approval of the transfer. Instead, they agreed to close and transfer ownership of the station and company on August 12, 1994 based upon the F.C.C.’s initial grant of approval. Thus, on that date, HBC began to run the day to day operations of the company and station. One week later, on August 19, 1994, Ruiz was terminated from her position as a live talk show personality at the station. The reason cited for her termination was the sale or transfer of the station and company. The F.C.C.’s final approval of the sale or transfer of the station and company to HBC, however, did not occur until approximately one year later, on August 10, 1995. Ruiz filed suit below claiming that she had been wrongfully terminated and that her employment agreement had been breached.
SRN moved for summary judgment on the grounds that Ruiz had been terminated for good cause pursuant to the terms of her employment agreement in that she was terminated only after the sale or transfer of control of the station and company to HBC. In response, Ruiz asserted in an affidavit, among other things, that in radio industry parlance, the term “transfer of control” of a radio station can only occur with final approval by the F.C.C. Thus, Ruiz maintains that since the F.C.C.’s final approval of the transfer did not occur until August 10, 1995, she was wrongfully terminated in August 1994. The trial court granted summary judgment and this appeal followed.
Ruiz is correct in her assertion that 47 U.S.C.A section 810(d) (1991), prohibits the assignment of a station’s license or the transfer of control of a station except upon application to the F.C.C. and upon the F.C.C.’s finding that the public interest, convenience, and necessity will be served thereby. 47 U.S.CA. § 310(d). Ruiz is incorrect as a matter of law, however, that final F.C.C. approval of the sale or transfer is a prerequisite for a transfer. In Improvement Leasing Company, 73 F.C.C.2d 676, 684 (1979), aff'd sub mom., Washington Ass’n for Television and Children v. F.C.C., 665 F.2d 1264 (D.C.Cir.1981), the F.C.C. was faced with the question of whether a transfer of control of a television station was valid where the transfer was consummated after the F.C.C.’s oral approval but prior to the issuance of its final written order. In concluding that the transfer was valid, the F.C.C. said that a transfer may be consummated merely upon the issuance of its standard Form 732:
Accordingly, we do not believe that the Communications Act requires that our approval of a broadcast transfer application is not effective, for purposes of consummation, until a written opinion or other public document is issued describing the action taken. The ability of applicants to consummate the transaction as proposed is solely dependent upon their knowledge, reasonably obtained, that the Commission has approved their applications....
There are, thus, no specific legal barriers to the closing of an assignment or transfer application prior to the release of a written opinion, and we believe that such activity should not be barred on policy grounds. Applicants who close an approved transaction prior to the release of a written document or prior to administrative or judicial review of the decision exercise their independent business judgment and proceed at their own risk with the full understanding that they may ultimately be required to undo the transaction. Such consummation in no way prejudices the Commission’s ability to take any remedial action it may consider necessary at a future date and in no way prejudices the rights of petitioners or other objecting parties to seek administrative review or judicial appeal of the Commission’s action.
*555 Improvement, 73 F.C.C.2d at 684; see also In re Applications of Spanish International Communications Corp., 3 F.C.C.R. 4319, 4321 (1988) (finding no error in granting transfer and assignment applications prior to resolution of judicial appeals).
Similarly, in this case, we find that the trial court correctly determined as a matter of law that SRN and HBC could proceed, albeit at their own peril, with the sale and transfer of this station based upon the F.C.C.’s preliminary approval given in its Form 732 on August 12, 1994. That being the case, we must conclude that Ruiz’s termination was for “good cause” as that term is defined in her employment agreement. Accordingly, summary judgment was properly entered in her former employer’s favor.
Affirmed.